UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No. 22-98 (ECT) |
| | ) | |
| Plaintiff, | ) | **DEFENDANT'S POSITION WITH** |
| v. | ) | **RESPECT TO SENTENCING** |
| | ) | |
| YUE VANG, | ) | |
| | ) | |
| Defendant. | ) | |

## INTRODUCTION

Mr. Vang is a humble 31-year-old male. He comes before the Court for sentencing on having pled guilty to two counts of production of child pornography and one count each of possession of child pornography and interstate communications with intent to extort.

Mr. Vang was born in St. Paul. His parents are still married. He parents continue to work the blue collar jobs they have always held. Mr. Vang is the fourth of seven children born to his parents. Mr. Vang's family is quite close. Extended family continues to live together, as is common in Mr. Vang's culture. The Court will likely find Mr. Vang to be a quiet man of few words. The Court will also likely recognize Mr. Vang's sincere regret and remorse for the course of conduct that landed him before the Court.

The Government is likely recommending a sentence of at least 360 months. For the reasons discussed herein, Mr. Vang alternatively requests a sentence of no greater than 180 months. This sentence is sufficient but not greater than necessary to accomplish all the policies and goals of sentencing. This sentence also fairly reflects Mr. Vang's level of acceptance of responsibility, remorse, and family support system.

## BACKGROUND

### 1.      An Immigrant Family

1

Mr. Vang's parents are first generation immigrants to the United States from Laos. (PSR at ¶ 85). Mr. Vang's parents moved to the U.S. to provide a life of more opportunity for their children. Hard work was, and still is, important to Mr. Vang's parents. Mr. Vang's parents set the example of a hard work-ethic for their children. Many of Mr. Vang's siblings have successful adult lives. Mr. Vang's parents had hopes that he would also become professionally and financially successful, but Mr. Vang wanted a different life. (*Id.*).

While Mr. Vang may not have pursued the professional life his parents had hoped, the family's had work ethic was instilled in Mr. Vang. Mr. Vang helped his family work on a chicken farm when he was only in middle school. (PSR at ¶ 87). Mr. Vang then got a job at McDonald's in high school (*Id.*). More recently, Mr. Vang maintained steady employment in the record division at Abbott Medical for over five years and in the shipping department at Thermo King. (PSR at ¶¶ 106-107). Mr. Vang's dedicated employment contributed to securing a home for his parents and siblings. Mr. Vang and his father are co-owners of a modest family home in St. Paul. (PSR at ¶ 89). The letters of support submitted on Mr. Vang's behalf also speak to Mr. Vang's commitment to work that allowed their family to obtain a home. (*See* Sentencing Materials).

Mr. Vang was fortunate to be raised in a supportive family. While his individual family members may not have been overtly affectionate toward one another, there was always a sense of support and family strength. Mr. Vang never experienced any forms of abuse, and there is no substance abuse issues amongst any immediate family members. (PSR at ¶¶ 86). The Court likely saw the level of Mr. Vang's family support at the Arraignment and Change of Plea Hearing on June 2, 2022. Mr. Vang's family has continued to help Mr. Vang get through his recent period of detention. Mr. Vang intends to continue to lean on family support upon receiving the Court's sentencing decision.

Mr. Vang is a kind, quiet, humble man. The plethora of letters received from family members speak to Mr. Vang's qualities as a good person. The letters describe Mr. Vang as a man who loves his family. The letters describe Mr. Vang's love and affection for his various younger cousins, nieces, and nephews and the reciprocal feelings of affection. (*See* Sentencing Materials). The letters speak to the fact that Mr. Vang's family continues to support him after learning of his crimes. This Court will read those letters, and so they need not be quoted at length here, but one thing is clear: Mr. Vang is a man who cares deeply for his family and has tremendous extended family support. The Court should account for this factor in fashioning a sentence that appropriately satisfies sentencing goals. Not only is Mr. Vang's overall risk to reoffend low, but his extensive support system all but ensures Mr. Vang is no longer a danger to the public nor will he be upon release.

## 2.    Offense Conduct.

Mr. Vang described his role in the offenses as very matter-of-factly. He did not dispute the factual allegations presented in his Information or Plea Agreement, and he does not now dispute the facts set forth in the PSR. Mr. Vang is not an eloquent man. He is not prone to long-winded responses or descriptions. Mr. Vang provided a statement of an acceptance of responsibility during his PSR interview in which he told the agent that he feels bad for what he did to the girls and would do anything within his means to help rectify his past conduct. (PSR at ¶ 23-24). Mr. Vang supplemented his interview statement with a written statement accepting full responsibility and indicating a deep remorse and understanding of the harm he caused. (PSR at ¶ 25). While Mr. Vang's course of conduct was no doubt extensive, it is worth noting that the conduct occurred online, and Mr. Vang never personally met or attempted to meet any of the girls in person.

## 3.    Mr. Vang's Lack of Criminal History

Mr. Vang does not have a criminal history, placing him in criminal history category I. (PSR at ¶¶ 77-80). The PSR notes that Mr. Vang has never served a term of imprisonment. (PSR at ¶ 130). Mr. Vang has led a law-abiding life for the vast majority of his life, save for the immediate preceding years underlying this case.

### 4.       Physical and Mental Health Condition and Custody Credit.

Mr. Vang has previously been diagnosed with gout. (PSR at ¶ 91). He has suffered from flare-ups during his time in detention. The flare-ups have been extremely painful and have made if difficult for Mr. Vang to stand or walk. He has not received the proper medical attention and care while in detention. He was given anti-inflammation and pain reliever medication, but they were not strong enough to help him walk without pain. It has also taken weeks for Mr. Vang to receive the necessary medication. The pain has also made it difficult for Mr. Vang to sleep. Mr. Vang had treated his gout with a Hmong herbal medication prior to detention, but this medication is not available in detention. (PSR at ¶ 92-93).   Obviously jail and prison are not the ideal setting for a person experiencing severe gout, even in the best of times. The food is inadequate to supply Mr. Vang with the proper nutrients, and this only exacerbates his uric acid levels.

Mr. Vang has experienced periods of depression and borderline suicidal thoughts. (PSR at ¶ 94). Mr. Vang noted mental health and mental illness are not really discussed in his family. (PSR at ¶ 95). To his credit, Mr. Vang is open to receiving mental health treatment while in custody. (PSR at ¶ 94).

Mr. Vang has been detained since the June 2, 2022 Plea Hearing. He will have 105 days of custody credit on September 14, 2022.

## DISCUSSION

### A.    Starting Guidelines Calculation.

Mr. Vang does not dispute the guidelines calculations set forth in the PSR. (PSR at ¶¶ 27-75, 112). Given the offense level, Mr. Vang has not been credited with a guideline reduction for acceptance of responsibility. (PSR at ¶ 130). However, Mr. Vang has otherwise satisfied the requirements for a 2-level reduction for acceptance of responsibility under USSG §3E1.1(a) and a 1-level reduction for his timely plea under USSG §3E1.1(b). (PSR at ¶ 26). As noted, Mr. Vang has demonstrated acceptance of responsibility for the offense and has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of the intention to enter a plea of guilty. (PSR at ¶¶ 73-74). "To the defendant's credit, he accepted responsibility for his conduct which includes waiving indictment and pleading guilty to an Information, and agreeing to stipulations regarding additional victims and restitution." (PSR at ¶ 130).

### B.    The parsimony Provision after *Booker and* Crafting an Individualized Sentence under § 3553(a).

In the post-*Booker* era of federal sentencing, the "Guidelines are not only not mandatory on sentencing courts; *they are also not to be presumed reasonable*." *Nelson v. United States*, 129 S.Ct. 890 (2009) (emphasis added). Even pre-*Booker*, it was "uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996).

However, in light of several Supreme Court cases, it is now incumbent on the sentencing court to "make an individualized assessment based on the facts presented" in each case. *Gall v. United States*, 128 S.Ct. 586, 602 (2007). District Courts "may not presume that the Guidelines range is reasonable." *Id.* at 597.

The Supreme Court in *Booker* held that the United States Sentencing Guidelines are advisory and that District Courts must examine all the § 3553(a) factors to impose a sentence "sufficient, but not greater than necessary" to accomplish the goals of sentencing. *United States v. Booker*, 543 U.S. 220 (2005). The ensuing trio of 2007 Supreme Court cases made clear that district courts must fashion individualized sentences based on the unique facts and circumstances of each case, and that the Guidelines do not enjoy a presumption of reasonableness. *See Gall v. United States*, 128 S.Ct. 586, 602 (2007) (probationary sentence substantially outside of Guidelines was reasonable and justified); *Kimbrough v. United States*, 128 S.Ct. 558, 570 (2007) (sentencing courts may depart from Guidelines range based solely on policy considerations, including disagreements with Guidelines sentencing policies); *Rita v. United States*, 127, S.Ct. 2456, 2465 (2007) (sentencing courts may vary based on arguments that Guidelines sentencing range itself fails to comport with § 3553(a) factors). The thrust of *Booker* and its progeny is "that the District Court is free to make its own reasonable application of the § 3553(a) factors, and to reject (after due consideration) the advice of the Guidelines." *Kimbrough*, 128 S.Ct. at 577 (Scalia, J., concurring).

Because the District Court is in a uniquely "superior position to find facts and judge their import under § 3553(a)," the Appellate Courts must now review all sentences under an abuse-of-discretion standard, regardless of whether the sentence is inside or outside the Guidelines range. *Gall*, 128 S.Ct. at 597, 602. The Supreme Court has rejected the notion that extraordinary circumstances are required to justify a sentence outside the Guidelines range. *Id*. at 595. The Supreme Court also rejected "the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence. *Id*. So long as sentences that differ from the Guidelines are justified, a sentencing court's decision stands unassailable on appeal. *See, e.g., United States v. Jiminez-Gutierrez*, 491 F.3d 923

(8th Cir.2007) (affirming substantial downward departure that was justified on record, and noting that even where circuit courts disagree with the degree of a trial judge's departure, the discretion to make such decisions is within the sole province of the District Court); *United States v. Gonzalez-Alvorado*, 477 F.3d 648, 650 (8th Cir.2007) (noting that a sentence that varies from the Guidelines range is reasonable so long as the judge offers appropriate justifications under § 3553(a) factors).

The Government is expected to request a mandatory minimum sentence of at least 30 years under its belief that the 15-year minimums for Counts 1 and 2 must run consecutively. As noted in the PSR Addendum, "Pursuant to 18 U.S.C. § 3584(a), if multiple terms of imprisonment are imposed on a defendant at the same time, the terms may run concurrently or consecutively. Multiple terms of imprisonment imposed at the same time run concurrently unless the sentencing judge orders or the statute mandates that the terms are to run consecutively. In this case, the applicable penalty as to Counts 1 and 2 each includes a mandatory minimum term of 15 years imprisonment, pursuant to 18 U.S.C. § 2251(e). However, there is no provision that requires those terms to be imposed consecutively. As such, the combined statutory minimum term for the offenses of conviction is 15 years and the maximum is 72 years. In accordance with 18 U.S.C. § 3584(b) and USSG §5G1.2, the Court has the authority to impose those terms to run consecutively or concurrently based on its consideration of the factors set forth in 18 U.S.C. § 3553(a)." (PSR Add. at ¶ 1).

Mr. Vang requests this Court impose the mandatory minimum 15-year sentence on Count 1 and concurrent sentences on Counts 2-4. This individualized sentence fairly and sufficiently considers the factors of 18 U.S.C. § 3553(a) while also accounting for Mr. Vang's lack of criminal history, significant level of acceptance of responsibility and assistance of his own prosecution, sincere remorse, family support, and an amenability to treatment and supervision.

C.      **The Characteristics of the Defendant -- § 3553(a)(1).**

7

Mr. Vang is quiet, humble, and good-natured person, notwithstanding his offense conduct. He has a strong work ethic instilled by his parents. He is loved by several extended family members. He likewise cares for his family, including his many nieces and nephews. The letters submitted on Mr. Vang's behalf present a person that is hard to reconcile with his offense conduct. Mr. Vang has a level of family support not typically seen in these kind of cases. The letters presented on his behalf give this Court a fuller picture of who Mr. Vang is. He is not a man defined by his offense conduct.

Mr. Vang is a modest man. He has no significant assets or savings. He worked hard to be able to jointly purchase a family home with his father. No significant financial assets were found or seized. Mr. Vang was not making money off of his offense conduct.

It should also be noted that Mr. Vang is 31 years old and most of the offense conduct occurred during a time when Mr. Vang was in his 20's. He was a relatively young man with little-to-no real prior romantic relationship experience. The online nature of the conduct impaired Mr. Vang's ability to truly appreciate the impact his conduct had on the girls. Mr. Vang's age at the time of the offense conduct in this case is a unique characteristic that must be accounted for in crafting the appropriate sentence.

The nature and circumstances of the offense, and the characteristics of Mr. Vang, support his request for the lowest sentence allowable by law.

E.      **The Need for the Sentence Imposed — § 3553(a)(2)(A)-(D): Societal and Institutional Sentencing Needs**

Statutory sentencing objectives require that a sentence reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant and provide the defendant with needed education or vocational training, medical care and other correctional treatment in the most

effective manner. 18 U.S.C. 3553(a)(2)(A)–(D). In this case, a sentence of not more than 15 years is sufficient, but not greater than necessary to serve these goals.

Federal sentencing practice generally applauds incremental sentencing increases. This case will yield the longest term of imprisonment in Mr. Vang's life.

Mr. Vang's lengthy period of imprisonment followed by strict supervised release limiting Mr. Vang's online and daily activity will sufficiently protect the public from Mr. Vang. Mr. Vang is not a violent person. Mr. Vang is not an angry person. Mr. Vang understands and significantly appreciates the harm caused by his conduct. He does not need to spend 15 years in prison to properly understand the effect of his actions. However, he recognizes that is a likely outcome. Mr. Vang will undoubtedly be a different person in 15 years, after 15 years of imprisonment. This lengthy period of confinement followed by strict supervised release will properly ensure Mr. Vang does not reoffend.

To send Mr. Vang away for more than the minimum sentence allowed by law would be to incubate an institutionalized mindset as opposed to incentivize a law-abiding mindset, which Mr. Vang has and seeks to maintain.

While the general public must also be deterred by the sentencing of federal defendants, a significant term in BOP custody is not a slap on the wrist. Because this is Mr. Vang's first criminal conviction, because he is not a career criminal, and because the public must perceive sentencing to distinguish between dissimilarly situated defendants, the minimum sentence allowable by law in this case will serve to deter the public generally from engaging in similar conduct.

A sentence of not more than 15 years will also function, as the parsimony provision intends, to promote general respect for the law. Likewise, as contemplated by § 3553(a), a sentence carefully tailored to the individual defendant promotes respect for the law. A sentence of 15 years also

provides sufficient time for Mr. Vang to complete all necessary mental health and sex offender treatment, as well as vocational programming.

Because Mr. Vang is motivated not to re-offend, because it will further the goals of both specific and general deterrence, because it will promote respect for the law, and because the interests of treatment and education should not counsel, on their own, for a longer sentence, Mr. Vang respectfully submits that a sentence of not more than 15 years is sufficient, but not greater than necessary to serve the purposes of § 3553(a)(2).

In fashioning an appropriate sentence, the Court must also consider society's needs for a sanction that is a just punishment, promotes respect for the law, deters criminal conduct, and reflects the seriousness of the offense. 18 U.S.C. § 3553(a)(2). The shortest sentence allowable by law in this case does not let Mr. Vang off easy. It is a just punishment, and more would be excessive.

**F.      Mr. Vang's Rehabilitative and Remedial needs, the Need for the Sentence Imposed, and the Kinds of Sentences Available – § 3553(a)(3).**

In fashioning an appropriate sentence, the Court is directed to consider society's needs for a sanction that is a just punishment, promotes respect for the law, deters criminal conduct, and reflects the seriousness of the offense, while ensuring the sanction is appropriate for the individual offender before the Court.

As for deterrence, there is little evidence to support the notion of a general deterrent effect of long prison sentences. In fact, the bulk of evidence suggests that there is little to no such impact of harsh sentences. Long sentences simply do not stop others from offending. *See, e.g.,* Valerie Wright, Ph.D., *Deterrence in Criminal Justice: Evaluating Certainty vs. Severity of Punishment* (Nov. 2010), *available  at*  https://www.sentencing   project.org/wp-content/uploads/2016/01/Deterrence-in-Criminal- Justice.pdf.

Sentencing Mr. Vang above 15 years would be excessively punitive. Mr. Vang is remorseful

and also self-reflective, aware of the harm he has caused to his victims, family, loved ones, and community. His conduct has forced his family to face friends and neighbors with shame. Mr. Vang knows this. He has a deep sense of the harm he has caused.

Included in the relevant considerations are possibilities for treatment, education, vocational training, supervised release and imprisonment. Mr. Vang is ready, willing, and able to participate in treatment and receive any pertinent vocational training available through the BOP. Mr. Vang requests the Court take his treatment needs into consideration in assigning him to an appropriate facility. Sandstone appears to have the requisite mental health staff to address Mr. Vang's mental health and psychological needs. Mr. Vang appears a likely candidate for the BOP's Non-residential Sex Offender Treatment Program (SOTP-NR). Sandstone's Psychological Services unit also appears capable of evaluating Mr. Vang for specific sex offender treatment needs.

A sentence of 15 years is sufficient time for Mr. Vang to complete mental health and sex offender treatment and vocational training. A lengthy period of supervised release is also available to this Court. Mr. Vang is willing to comply with the special conditions of supervision requested in the PSR. (PSR at ¶¶ 131-139). Mr. Vang asserts that a lengthy period of supervised release would satisfactorily replace the need for any additional imprisonment beyond 15 years.

Mr. Vang is also committed to complying with the financial requirements ordered of him to the best of his modest abilities. Mr. Vang asks the Court to take his limited financial assets into account when fashioning a fine and restitution order. (*See*, PSR at ¶ 110).

### G.    The Sentencing Range Established for the Crime, and Any Pertinent Policy Statements -- § 3553(a)(4)-(5).

The Guidelines were designed to "cabin judicial discretion within narrow procedural and substantive limits." *United States v. Anderson*, 15 F.3d 278, 280 (2nd Cir.1994). However, after *Booker* and its progeny, the Court's discretion is now cabined by reason, experience and wisdom,

tempered by the Parsimony provision, and merely informed by the Guidelines. Furthermore, because courts may now depart based solely on the basis of a policy disagreement with Guidelines sentences for particular crimes, the lowest sentence allowable by law is sufficient to serve the goals of sentencing.

Furthermore, Mr. Vang's lack of criminal history, high level of acceptance of responsibility and cooperation, significant family support, amenability to treatment, and general unlikeliness to reoffend also counsel in favor of the lowest sentence allowable by law.

The policy considerations in this case all counsel in favor of imposition of the lowest sentence allowable by law.

### H.     Avoiding Unwarranted Sentencing Disparities -- § 3553(a)(6).

In determining an appropriate sentence, a court must ensure the sentence imposed does not create sentencing disparities among similarly-situated offenders. 18 U.S.C. § 3553(a)(6). Unwarranted disparities can arise by the presence or absence of Guidelines circumstances that exist in only some districts, *see, e.g., United States v. Jiminez-Perez*, 659 F.3d 704, 707-10 (8th Cir. 2011) (recognizing absence of "Fast Track" program in one district creates an unwarranted disparity; offenders received different sentences based on where they were charged), or by virtue of the Guidelines which themselves create those disparities, *Spears v. United States*, 555 U.S. 261, 266 (2009) ("[D]istrict courts are entitled to reject and vary categorically from the crack cocaine Guidelines based on a policy disagreement with those Guidelines.").

Mr. Vang recognizes his course of conduct impacted a large number of victims. He was forthcoming with his agreement and admission to this factor. This Court is likely well aware that these types of offenses usually involve a high number of victims. The statutory minimums on these types of offenses account for the usual large number of victims. That is one reason why the statutory

minimums are as high as they are.

Mr. Vang has a criminal history score of 0. He is not a repeat offender. This will be his first period of imprisonment. Mr. Vang has also likely exhibited a higher level of acceptance of responsibility and cooperation than most similarly situated defendants. For these reasons, Mr. Vang respectfully asks the Court to impose the lowest sentence allowable by law.

Imposition of the lowest sentence allowable by law does not itself create any unwarranted disparities. Over the past decade, sentencing courts have regularly varied from guidelines ranges that would have called for prison time in numbers too great to list. In *Gall*, for instance, the Supreme Court confirmed that a sentencing court within this circuit was well within its discretion to give a probationary sentence to a drug conspirator with a 30-to-37-month guidelines range. 552 U.S. at 57-59. This was based in part on Mr. Gall's limited role in the conspiracy, his minor criminal past, and his immaturity, and was done in spite of prison sentences imposed for Mr. Gall's similarly situated coconspirators. *Id.* at 43-44. Several other Eighth Circuit cases highlight the appropriateness of imposing sentencing variances in cases where the individual's characteristics warrant such treatment. *See e.g., United States v. Shy*, 538 F.3d 933 (8th Cir. 2008).

In order to ensure respect for the law, but also to avoid unwarranted disparities, the minimum sentence allowable by law in this case is sufficient, but not greater than necessary.

## CONCLUSION

Based on all facts, records, and arguments herein, as well as the factors in the parsimony provision, and the unique circumstances of Mr. Vang and this case, Mr. Vang respectfully requests a sentence of no greater than 15 years. The statutory minimum sentence is sufficient, but not greater than necessary, to serve all the goals and policies of sentencing in this case.

Respectfully submitted,

**ARECHIGO & STOKKA, P.A.**

Dated: August 30, 2022

/s/ John Arechigo
John Arechigo, #386535
332 Minnesota St., Ste. W1080
St. Paul, MN 55101
Phone: 651-222-6603
john@arechigo-stokka.com
ATTORNEY FOR DEFENDANT